JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:16-cv-02567-RGK-JPR | Date | November 21, 2019 |
|---|---|---|---|
| Title | *Thomas E Rubin v. United States of America* | | |

| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | | |
|---|---|---|---|
| Sharon L. Williams | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:** **(IN CHAMBERS) Order Re: Plaintiff Rubin's Motion for Summary Judgment [DE 42] and Defendant United States' Motion for Summary Judgment [DE 39].**

## I.  INTRODUCTION

Thomas E. Rubin ("Plaintiff") was the sole shareholder of Focus Media, Inc. ("Focus"), a subchapter S corporation that engaged in advertising placement. On April 14, 2016, Plaintiff filed a Complaint against the United States of America ("Defendant") for tax refunds in the amounts of $2,564,260 from 1998, $595,218 from 1999, $6,957,293 from 2000 and $0 from 2001. Plaintiff bases his entitlement to a refund on the application of Focus' losses to his personal tax liability.

In October 2016, this Court granted Defendants' Motion for Judgment on the Pleadings on the ground that Plaintiff had failed to submit a statement identifying the inconsistencies between his personal tax returns and Focus' tax returns as required by 26 U.S.C. § 6037(c)(2)(A). On September 24, 2018, the Ninth Circuit held that Plaintiff's submissions met the purposes of the statutory requirement and remanded the case for further proceedings.

Presently before the Court are the Parties' cross-motions for Summary Judgment. For the following reasons the Court **DENIES** Plaintiff's Motion and **GRANTS** Summary Judgment in favor of the Defendant.

## II.  BACKGROUND

### A.  Focus Media

Focus was founded in 1983 and employed over 150 people at its peak in the mid-1990s. Both Plaintiff and Focus timely filed all required tax returns and paid all required income taxes during the relevant time period. Further, Plaintiff's original tax returns consistently reflected the flow-through income and losses reported on Focus's returns.

JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:16-cv-02567-RGK-JPR | Date | November 21, 2019 |
|---|---|---|---|
| Title | *Thomas E Rubin v. United States of America* | | |

On March 13, 2000, Sears, Roebuck and Co. (Sears) filed a suit against Focus for failing to pay media outlets with over $20 million that Sears had provided to Focus in trust for that reason, and instead using the funds for other purposes. Suits by other major customers followed, and Focus was subsequently enjoined from collecting any of its unpaid accounts receivable ("AR"). This injunction essentially put Focus out of business, as Focus needed those unpaid receivables to continue its operations. On October 6 of that year, Focus' creditors filed an involuntary petition for Chapter 7 bankruptcy against Focus, and a bankruptcy trustee ("Trustee") was appointed. At the time of Focus' bankruptcy, it had accounts receivable of approximately $23 million, and accounts payable (AP) of approximately $66 million. The Trustee advised the bankruptcy court that Focus's AR was worthless, but did not write off the AR as non-collectible on Focus's 2000 tax return.

In March of 2002, the Trustee filed an amended complaint against Mr. Rubin and Focus' CFO, Thomas Sullivan, asserting claims for fraudulent conveyance, illegal corporate distributions, and breach of fiduciary duties, among others. The amended complaint specified transfers to Mr. Rubin of $19,331,784.13 and to Mr. Sullivan of $442,284.36. It further identified two loans from Focus to Mr. Rubin—one for $4,557,000 and one for $11,685,000—that were never repaid and were later changed to "distributions" in Focus' books.

The Trustee continued to administer Focus' bankruptcy estate for years thereafter. Ultimately, over 350 proofs of claim were filed. In August 2003, the Chapter 7 Trustee recovered $1 million dollars from a media liability insurance policy, and in October 2003 the Trustee filed suits against several former clients seeking to collect unpaid receivables. In October 2005, the Trustee filed a motion to abandon the adversary proceeding against Rubin and Sullivan on the grounds that Focus lacked sufficient funds to pay counsel and the collectability of any judgment would be uncertain. Sears and several of Focus' other creditors opposed the motion and asserted that the proceeding continued to have value. In May of 2007 the Trustee obtained judgment against Mr. Rubin and Mr. Sullivan for approximately $36.3 million. As of the filing of the Trustee's final report, this judgment remained uncollected, although the Trustee stated an intent to file a motion to prevent the Judgment from being abandoned upon closing. (Trustee's Decl. Re Final Report ¶ 12, ECF No. 39-39.)

In December of 2017, the Trustee signed a final report which reflected that the Focus bankruptcy estate was "administratively insolvent," as the remaining assets of the estate were not sufficient to pay its administrative expenses.

### B. Gitlitz v. Commissioner

Before proceeding to the present dispute, the Court briefly reviews the legal framework within which that dispute takes place:

The profits and losses of a subchapter S corporation ("S corporation") such as Focus are not taxed at the corporate level. Instead, they "pass through" to the S corporation's shareholders, who then

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:16-cv-02567-RGK-JPR | Date | November 21, 2019 |
|---|---|---|---|
| Title | *Thomas E Rubin v. United States of America* | | |

pay taxes on the profits and deduct any losses. A shareholder's "basis" in the S Corporation refers (in general terms) to the level of their capital investment in that corporation. Under ordinary circumstances the shareholder of an S Corporation cannot deduct corporate losses that exceed the shareholder's basis in the corporation. This prevents shareholders from using an S Corporation's losses to shelter income obtained from other, unrelated sources.

In 2001, however, the Supreme Court ruled that, under the text of the relevant statutes, an insolvent S corporation's cancellation of indebtedness ("COD") income served to increase a shareholder's basis in the stock of the S corporation, despite the fact that it was excluded from a taxpayer's gross income under Section 108 of the Internal Revenue Code. *See Gitlitz v. Comm'r*, 531 U.S. 206 (2001). COD income is the taxable benefit that results when a debt is eliminated. This decision defined a loophole which permitted the solvent shareholder of an insolvent S corporation to use the S corporation's loss to shelter unrelated personal income from taxation. Although Congress amended the Internal Revenue Code in 2002 specifically to close this loophole, *Gitlitz* remains the applicable law for the years of the tax returns at issue in this case.

### C. The Present Tax Refund Dispute

Shortly after the commencement of Focus bankruptcy in 2000, the Trustee advised the bankruptcy court that Focus's AR was worthless. However, the Trustee did not write off the AR as non-collectible on Focus's 2000 tax return. Plaintiff therefore asserts that the Trustee failed to account for $23,110,349 of bad debts expenses, which could be deducted from taxable income as a loss. Plaintiff likewise asserts that Focus's $66,696,211 of accounts payable (AP) became uncollectable at approximately the same time, as Focus had ceased operating and had no way of paying its outstanding debts. Plaintiff therefore argues that Trustee erred by failing to account for that sum as cancellation of debt income.

The result of these parallel adjustments, under the law in *Gitlitz*, would be as follows: (1) Plaintiff's "basis" in Focus would increase by the full amount of Focus' COD income, namely $66,696,211, and (2) Plaintiff would therefore be able to "pass through" Focus' $23,110,349 lost AR, resulting in a significant retroactive tax deduction and a proportionally large financial benefit.

In October 2004, Plaintiff drafted a pro forma K-1 and a pro forma amended tax return for Focus for the 2000 tax year, which reflected the bad debt expenses and the cancellation of indebtedness income. Plaintiff attached these forms to his set of amended 1040x claims for tax refunds of $2,564,260 for 1998, $595,218 for 1999, and $6,957,293 for 2000. Plaintiff subsequently filed his amended 1040x claim for 2001 of $0, accompanied by Form 8082. Plaintiff calculated these refunds based on the 2000 pro forma return, which claimed a net operating loss and carried back the loss to the 1998 and 1999 tax years.

JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:16-cv-02567-RGK-JPR | Date | November 21, 2019 |
|---|---|---|---|
| Title | *Thomas E Rubin v. United States of America* | | |

Almost ten years later, the Internal Revenue Service ("IRS") disallowed Plaintiff's amended tax refund claims. Significantly, the IRS sent Plaintiff two notices of disallowance: the first was sent to his home address on file with the IRS on April 2, 2014, and the second was sent to his tax attorney on April 17, 2014. Each notice contained the following identical provision regarding time to file suit challenging the disallowance: "The law permits you to do this within 2 years from the mailing date of this letter."

On April 14, 2016, Plaintiff filed suit seeking over $10 million in tax refunds for tax years 1998 through 2001.

### D. Disputed and Undisputed Facts

The basic facts of this case are not in dispute. The parties agree on the structure, ownership and operation of Focus Media, Inc., as well as the timeline of its bankruptcy, the actions of the Trustee, and the numerous cases filed against it. They further agree on the sums of money in question and the financial consequences of the Plaintiff's proposed tax amendments. The Parties dispute, rather, the conclusions that should be drawn from the facts presented: (1) whether Focus realized over 66 million dollars of cancellation of debt income in the year 2000, and (2) whether Focus in fact realized a loss of over 23 million dollars in accounts receivable in that same year. (Pl.'s Statement of Genuine Disputes of Material Fact ("SGD") No. 1-4, ECF No. 46-1.) The parties do not dispute the amounts asserted, but rather whether the loss of each sum was sufficiently certain and ascertainable that it should have been reflected on Plaintiff's taxes during that year.

## III. JUDICIAL STANDARD

Under Federal Rule of Civil Procedure 56(a), a court may grant summary judgment only where "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Facts are "material" only if dispute about them may affect the outcome of the case under applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Id.*

To prevail on a summary judgment motion, the movant must show that there are no genuine issues of material fact as to matters on which it has the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Such a showing "must establish beyond controversy every essential element" of the movant's claim or affirmative defense. *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003) (internal quotation marks omitted). On issues where the moving party does not have the burden of proof at trial, the moving party is required only to show that there is an absence of evidence to support the non-moving party's case. *See Celotex*, 477 U.S. at 325. Upon such showing, the court may grant summary judgment "on all or part of the claim." Fed. R. Civ. P. 56(a)–(b).

JS-6

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | 2:16-cv-02567-RGK-JPR | Date | November 21, 2019 |
| Title | *Thomas E Rubin v. United States of America* | | |

To defeat a summary judgment motion, the non-moving party may not merely rely on its pleadings or on conclusory statements. *See Celotex*, 477 U.S. at 324. Nor may the non-moving party merely attack or discredit the moving party's evidence. *Nat'l Union Fire Ins. Co. v. Argonaut Ins. Co.*, 701 F.2d 95, 97 (9th Cir. 1983). Rather, the non-moving party must affirmatively present specific evidence sufficient to create a genuine issue of material fact for trial. *See Celotex Corp.*, 477 U.S. at 324.

## IV.  DISCUSSION

The Court first addresses Defendant's argument that Plaintiff's claim is barred by statute of limitations and ineligible for equitable tolling.

### A.  **Plaintiff's Claim Is Not Barred by the Statute of Limitations**

The Internal Revenue Code states that no suit for the recovery of any internal revenue tax "shall be begun . . . after the expiration of 2 years from the date of mailing by certified mail or registered mail by the Secretary to the taxpayer of a notice of the disallowance[.]" 26 U.S.C. § 6532(a)(1) (emphasis added). Paragraph (a)(2) specifies that the two-year period may be extended as agreed in writing between the taxpayer and the secretary, and paragraph (a)(3) provides that if a person files a waiver of the requirement that they be mailed a notice of disallowance, then "the 2-year period prescribed in paragraph (1) shall begin on the date such waiver is filed." 26 U.S.C. § 6532(a)(2)-(3)

Paragraph (a)(4) addresses the effect of subsequent actions by the IRS on the two-year timeline, and reads in full as follows:

> (4) Reconsideration After Mailing of Notice: Any consideration, reconsideration, or action by the Secretary with respect to such claim following the mailing of a notice by certified mail or registered mail of disallowance shall not operate to extend the period within which suit may be begun. 26 U.S.C. § 6532(a)(emphasis added).

The IRS sent Plaintiff two notices of disallowance. It sent the first to his home address on file with the IRS on April 2, 2014, and the second to his tax attorney on April 17, 2014. Plaintiff maintains that he had changed addresses by the time the April 2 notice was sent, and so never received it. Therefore, Plaintiff asserts that the only notice he was aware of was that which was sent to his tax attorney on April 17, and which advised that he had two years from the date of its mailing to file suit challenging the disallowance in Federal District Court. Because Mr. Rubin filed suit on April 16, 2016, he is therefore within two years of mailing as defined by the second notice, but outside the two-year period as defined by the first.

Defendant asserts (1) that the relevant statute of limitations, defined by 26 U.S.C. § 6532(a), is a limitation on this Court's jurisdiction and therefore not subject to equitable tolling, and (2) that the time

JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:16-cv-02567-RGK-JPR | Date | November 21, 2019 |
|---|---|---|---|
| Title | *Thomas E Rubin v. United States of America* | | |

period began to run from the IRS' first notice of disallowance. The Court addresses Defendants' jurisdictional argument first.

   1. *26 U.S.C. § 6532(a) Is Subject to Equitable Tolling*

There are two principal statutes at issue in Defendants' argument. The first, as discussed above, is 26 U.S.C. § 6532(a), which specifies a two-year statute of limitations for a taxpayer to file suit challenging the IRS' disallowance of a refund. The second is 26 U.S.C. § 6511, which prescribes numerous deadlines for taxpayers seeking to file their initial refund claim with the IRS. The United States Supreme Court has held that the filing deadlines described in § 6511 are jurisdictional and cannot be equitably tolled by a district court, but it has not directly addressed the filing deadlines created by § 6532 in the same way. *United States v. Brockamp*, 519 U.S. 347, 352 (1997). Defendant urges this Court to extend *Brockamp*'s prohibition on equitable tolling to § 6532(a).

In *Brockamp*, the Supreme Court found that § 6511's detailed list of specific exceptions to its filing deadlines indicated that Congress did not intend the courts to read additional equitable exceptions into its text: "Section 6511's detail, its technical language, the iteration of the limitations in both procedural and substantive forms, and the explicit listing of exceptions, taken together, indicate to us that Congress did not intend courts to read other unmentioned, open-ended 'equitable' exceptions into the statute that it wrote." *Brockamp*, 519 U.S. at 352. The *Brockamp* Court noted that "[t]ax law . . . is not normally characterized by case-specific exceptions reflecting individualized equities[,]" and that the creation of an implicit "equitable tolling" provision risked forcing the IRS to review a deluge of late-filed claims. *Id*. Overall, the Court found that "the nature and potential magnitude of the administrative problem suggest that Congress decided to pay the price of occasional unfairness in individual cases . . . in order to maintain a more workable tax enforcement system." *Id.* at 352-53.

The question of whether the same considerations also prohibit a court from equitably tolling 26 U.S.C. § 6532 has divided courts at both the district and circuit levels. The Federal Circuit, for instance, has stated unambiguously that 6532(a) cannot be equitably tolled. *See RHI Holdings, Inc. v. United States*, 142 F.3d 1459, 1462 (Fed. Cir. 1998) (the language of § 6532(a)(4) "explicitly prohibits equitable considerations based on the actions of the IRS after a notice is mailed."). Defendant also cites to several district courts in the Ninth Circuit that have agreed with that position and declined to equitably toll the statute in cases similar to this one. *See, e.g., Aljundi v. United States*, No. CV 12-02079-CJC, 2013 WL 7121190 (C.D. Cal. July 11, 2013); *Thomasson v. United States*, No. C-96-3023-VRW, 1997 WL 220321, at *4 (N.D. Cal. Apr. 21, 1997).

However, while the Ninth Circuit has not directly addressed § 6532(a), it has held that a court can equitably toll another subsection of the same statutory provision, § 6532(c), which addresses refund suits by third parties rather than by the taxpayer themselves. *Volpicelli v. United States*, 777 F.3d 1042, 1044 (9th Cir. 2015). As a preliminary matter, the *Volpicelli* Court noted that the Supreme Court's decision in *Irwin v. Department of Veterans Affairs* creates a rebuttable presumption that filing deadlines

JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:16-cv-02567-RGK-JPR | Date | November 21, 2019 |
|---|---|---|---|
| Title | *Thomas E Rubin v. United States of America* | | |

for suits against the government can be equitably tolled unless Congress has provided otherwise. *Id.* Citing *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 95-96 (1990). It then evaluated § 6532(c) in terms of the same factors according to which the Supreme Court had analyzed § 6511 in *Brockamp*, and held that those factors did not justify extending *Brockamp*'s prohibition on equitable tolling to § 6532(c). *Id.* The *Volpicelli* Court found that § 6532(c) did not share either § 6511's highly technical language or its extensive list of exceptions, nor did it contain any "substantive" statutes of limitations the tolling of which could affect the actual amount of recovery. *Id.* at 1045-46. And while the Ninth Circuit acknowledged that the nature of tax law had itself been a factor Supreme Court's decision, it nevertheless held that "the other factors on which the Court relied are not a close enough fit with § 6532(c) to render *Brockamp* controlling." *Id.* at 1046.

This Court agrees with the line of cases that have found *Volpicelli*'s reasoning equally applicable to § 6532(a). *See Wagner v. United States,* 353 F. Supp. 3d 1062, 1067–68 (E.D. Wash. 2018) ("[f]ollowing the reasoning set forth in *Volpicelli*, the Court finds 26 U.S.C. § 6532(a) is not jurisdictional[.]"); *Hyler v. United States*, No. C 07-05046 CRB, 2008 WL 191423, at *2 (N.D. Cal. Jan. 22, 2008) (applying analogous pre-*Brockamp* Ninth Circuit precedent for the proposition that "equitable tolling can be applied to the limitations set forth in § 6532(a).").

As an initial matter, it would be a disjointed statutory scheme in which the filing deadline in subsection (a) constituted a hard limit on the district court's jurisdiction, whereas the deadline in subsection (c) could be tolled at that same court's discretion. Furthermore, while paragraph (a) is somewhat more involved than paragraph (c), it does not approach the level of technical complexity embodied in § 6511, nor does it contain any deadlines which could impact the substantive amount of a taxpayer's recovery.

Defendant urges that paragraph (4) of § 6532(a) requires the opposite outcome, as it provides that "[a]ny consideration, reconsideration, or action by the Secretary . . . following the mailing of a notice . . . of disallowance shall not operate to extend the period within which suit may be begun." The Government correctly points out that § 6532(c) contains no similar provision, and reads paragraph (a)(4) to indicate that "Congress expressly precluded subsequent actions of the IRS—like sending a second denial letter—from extending the statute of limitations. (Def.'s Reply to Pl.'s Mot. for Sum. J. 8:18-23, ECF No. 48.) While ongoing review or administrative action by the IRS may not operate to extend the filing deadline, the Court does not believe this provision bars equitable tolling in cases of basic miscommunication such as that involved here. And while Defendant cites to *Garrett v. U.S. I.R.S.* for an instance in which the Ninth Circuit refused to toll § 6532(a) based on a second notice of disallowance, *Garrett* is an unpublished, three-paragraph opinion that preceded *Volpicelli* and offers little to inform our analysis here. *See* 8 F. App'x 679 (9th Cir. 2001).

For the foregoing reasons, the Court finds that 26 U.S.C. § 6532(a) is non-jurisdictional and can be equitably tolled.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:16-cv-02567-RGK-JPR | Date | November 21, 2019 |
|---|---|---|---|
| Title | *Thomas E Rubin v. United States of America* | | |

2. *Plaintiff's Claim Is Equitably Tolled*

Equitable tolling is a case-by-case inquiry. *Scholar v. Pac. Bell*, 963 F.2d 264, 267 (9th Cir. 1992). Federal Courts have generally applied equitable tolling "in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990). However, courts are unlikely to toll the statute of limitations where the claimant has failed to exercise due diligence in preserving his legal rights. *Id.*

Here, Plaintiff submitted his application for a tax refund to the IRS in October of 2004. Nearly a decade later, his tax attorney received a notice of disallowance, dated April 17, 2014. That notice specified that Plaintiff could file suit in the district court "within 2 years from the mailing date of this letter." Plaintiff filed suit on April 16, 2014, within two years of that notice. The public has a right to rely on the written instructions of its administrative agencies. While the IRS' transmission of a separate notice to Plaintiff's former address two weeks earlier may not rise to the level of "deliberate trickery," it is also hardly indicative of any failure by the Plaintiff to diligently pursue his rights.

The Court finds Plaintiff's claim a proper subject for equitable tolling and proceeds to the disputed question of whether Plaintiff realized COD income in the year 2000.

B. **Focus Did Not Realize Cancellation of Indebtedness Income in the Year 2000**

"A loan is generally not taxable income because the receipt of the loan is offset by the obligation to repay the loan." *Milenbach v. Comm'r*, 318 F.3d 924, 930 (9th Cir. 2003). "For this rule to apply, however, the loan must be an existing, unconditional, and legally enforceable obligation for the payment of a principal sum." *Id.* (internal quotations omitted). "This means that a taxpayer who has incurred a financial obligation, which obligation is later discharged or the taxpayer is released from the indebtedness, has realized an accession to income." *Friedman v. Comm'r*, 216 F.3d 537, 545 (6th Cir. 2000) *citing* 26 U.S.C. § 61(a)(12). A debt or liability is considered discharged for purposes of COD income "when it becomes clear that the debt will never have to be paid." *Id.* at 546. Determining the timing of a discharge of debt requires "a practical assessment of the facts and circumstances relating to the likelihood of payment." *Milenbach v. Comm'r*, 318 F.3d at 935–36 *citing Friedman*, 216 F.3d at 546. Courts look at all of the facts concerning repayment, requiring only that the time of discharge be fixed by some identifiable event which fixes the loss with certainty. *Id.* Repayment of the loan need not become absolutely impossible before a debt is considered discharged. A slim possibility that a debt may still be enforced does not prevent a debt from being treated as discharged for federal tax purposes.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:16-cv-02567-RGK-JPR | Date | November 21, 2019 |
|---|---|---|---|
| Title | *Thomas E Rubin v. United States of America* | | |

*Milenbach v. Comm'r*, 318 F.3d at 936 *citing Exch. Sec. Bank v. United States,* 492 F.2d 1096, 1099 (5th Cir.1974).

The question before the Court is therefore whether some identifiable event demonstrated with certainty that Focus' had been released from its indebtedness or made it clear that its debts would never have to be paid as of the end of the year 2000.

Plaintiff identifies seven occurrences, or groupings of occurrences, that it asserts constitute an "identifiable event" for purposes of establishing that Focus' debt was considered discharged in the year 2000: (1) the loss of its four major customers; (2) numerous injunctions prohibiting Focus from collecting its AR; (3) a contempt ruling for violating one of the aforementioned injunctions, (4) a cessation of payments on its AP after June of 2000; (5) Focus' placement into involuntary bankruptcy by three of its creditors in October 2000; (6) the fact that when the trustee took over in late 2000, Focus had only an approximate $1 million of cash on hand and three-hundred thousand dollars in other assets, and (7) the denial, in November of 2000, of Focus' motion to dissolve Sears' injunction against it, including the state court's observation that after six months of litigation, Focus had provided no new evidence to support it. (Pl.'s Mot. for Sum. J. 14:2-25:10, ECF No. 42.)

Taken together, these events indicate that Focus had ceased to meaningfully operate and had liabilities that significantly exceeded its assets. Those elements alone, however, do not establish that its debts had been canceled or would never have to be paid. Focus' creditors forced it into bankruptcy in October of 2000. In March of 2002, the Chapter 7 Trustee sued Mr. Rubin and Mr. Sullivan for fraudulent conveyance and illegal corporate distributions, seeking recovery of funds that they had allegedly withdrawn from the company. These included multiple payments in the year 2000 that totaled $19,331,784.13 to Mr. Rubin (Pl.'s Reply to Def.'s Stmt. of Undisputed Facts No. 19-20), as well as two loans from Focus to Mr. Rubin in the amounts of $11,685,000 and $4,557,000 that were never repaid and were subsequently changed to distributions. *Id.* at No. 21. It also included $442,284.36 that was transferred to Mr. Sullivan. In total, that amounts to $36,016,068.49 which, if successfully collected by the Trustee, would have been available to pay Focus' debts. In May of 2007, the Trustee obtained a judgment against Mr. Rubin and Mr. Sullivan for a combined $36.3 million.

Plaintiff points out that although the Trustee ultimately obtained a judgment against Rubin and Sullivan, that judgment has not been enforced and Focus' creditors have never been paid from its proceeds. However, that was hardly a foregone conclusion at the end of the year 2000. As of December 31, 2000, Focus had been forced into bankruptcy less than three months earlier, and bankruptcy proceedings had in barely begun. What was known for certain was that Focus owed a great deal of money and that Focus had a single shareholder, Mr. Rubin. Given the accusations in late 2000 that Focus had misallocated over $20 million from Sears alone, it was not unreasonable to believe that claims against its sole shareholder might be forthcoming, as they in fact were. The prospect that funds

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:16-cv-02567-RGK-JPR | Date | November 21, 2019 |
|---|---|---|---|
| Title | *Thomas E Rubin v. United States of America* | | |

might be recovered from Mr. Rubin by the Trustee and used to pay Focus' creditors was hardly a "remote possibility," regardless of how it may have ultimately resolved seven years later.

Defendant cites to two cases that are instructive on this point:

In *Friedman v. Commissioner*, an insolvent S corporation ("New Manchester") was forced into Chapter 7 Bankruptcy with approximately $30 million in outstanding accounts payable. *Friedman v. Comm'r*, 216 F.3d 537, 539 (6th Cir. 2000). As in this case, shareholders of New Manchester sought to increase their basis in the S corporation by the amount of their asserted COD income for the year 1992, and thereby realize a loss for tax purposes. *Id.* The Sixth Circuit held that petitioners had failed to demonstrate that their debts were uncollectable as of 1992, and focused in particular on (1) the trustee's continued management of the bankruptcy estate into 1995, and (2) an outstanding fraudulent conveyance claim for eleven million dollars against New Manchester's shareholders. On the latter point, the *Friedman* Court held that "because the value of the claim was uncertain in 1992, the actual amount New Manchester's estate would realize from the claim was not ascertainable in that year. Therefore, the total debt that would be discharged could not have been discerned in 1992." *Id.* at 548. Based on foregoing, the Sixth Circuit stated that "regardless of how improbable it was that all of, or any of, New Manchester's outstanding liabilities would be paid, the fact remains that no identifying event occurred from which this Court can determine the debt was discharged." *Friedman*, 216 F.3d at 548.

Likewise, in *Alpert v. United States*, plaintiff shareholders of a bankrupt S corporation ("Cumulus") sought to realize COD income in order to increase their corporate basis and obtain the same tax advantage at issue here. *Alpert v. United States*, 481 F.3d 404 (6th Cir. 2007). The shareholders asserted that a receiver's report which documented the disposition of all the corporation's assets for $2.9 million, combined with the fact that the corporation's unsecured outstanding debt exceeded $26 million, constituted an "identifiable event" that triggered the realization of COD income. *Id.* at 408. Affirming the district court's order of summary judgment in favor of the government, the Sixth Circuit held that "[w]hile the filing of the report is undoubtedly an event in the most literal sense, it is not an event that is relevant to the discharge of debt. The filing of the report had no impact on the amount of debt owed by Cumulus or the likelihood of its repayment." *Id.* The Court noted that aside from the report, the plaintiff's argument was largely indistinguishable from that in *Friedman*, where "the debts of the bankrupt company also greatly exceeded the total value of its assets, and the government even stipulated that the debts in excess of the assets would never be repaid." *Id.* As in *Friedman*, the Sixth Circuit held that the plaintiff had failed to allege "an identifiable event which fixes the loss with certainty."

The requirement that some identifiable event fix the discharge of a debt with certainty makes sense when considered in terms of the ordinary functioning of our tax system. This case, like the two cited above, takes place in the context of a statutorily inverted universe where the sudden realization of a massive tax liability is, paradoxically, a thing to be desired. Generally speaking, however, citizens prefer to be taxed less rather than more. It takes little imagination to conceive the frustration an ordinary taxpayer might feel in being taxed by the IRS on income from a debt that has been "canceled" while

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:16-cv-02567-RGK-JPR | Date | November 21, 2019 |
|---|---|---|---|
| Title | *Thomas E Rubin v. United States of America* | | |

their creditors are still actively in the process of trying to recover the supposedly "canceled" debt from them. Conceived of this way, the idea that the IRS should assess cancellation of debt income less than three months into a bankruptcy that began on October 3, 2000 and did not see a final report signed until 2017 seems more than a little hasty. Admittedly, the Trustee's fraudulent conveyance claim was not "ongoing" as of the end of the year 2000, but that is only because the bankruptcy proceedings were so new that he had not yet had the opportunity to file it.

Creditors do not force a company into a bankruptcy because they have forgiven its debts. A bankruptcy Trustee does not sue that company's sole former shareholder to recover fraudulently transferred funds because the Trustee has given up on paying them. An attempt to recover approximately $36 million dollars of the corporation's funds from the person to whom they were indisputably transferred within the preceding year constitutes more than a "slight possibility" of repayment.

The Court therefore concludes that Plaintiff cannot demonstrate that Focus realized COD income in the year 2000 based on the undisputed facts between the two parties. As this question decides the case at hand, the Court does not proceed to the issue of whether or not Focus realized a loss on its AR in the same year.

The Court notes that it has reviewed the expert report of William F. Wolf and the declaration of James T. Bristol. (ECF No. 42-88 and 42-67.) Mr. Wolf's report is effectively a restatement of the facts, law, and legal conclusions presented in Plaintiff's briefs. The Court declines to adopt Mr. Wolf's conclusions. Similarly, without disputing the accuracy of Mr. Bristol's accounting, the Court declines to agree with him when in paragraphs 3-4 he states that he believes Mr. Rubin is entitled to his desired refund under the Supreme Court's opinion in *Gitlitz*. This, again, is a legal conclusion that is not particularly helpful and which the Court is not bound to credit. Lastly the Court notes that neither expert makes any mention of the Trustee's fraudulent conveyance claim against Mr. Rubin, which further limits their value in understanding the key issues in this case.

### V.     EVIDENTIARY OBJECTIONS

To the extent the parties have objected to any of the evidence relied upon by the Court, those objections are overruled for purposes of this Order.

### VI.     CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion and **GRANTS** Defendant's Motion for Summary Judgment.

**IT IS SO ORDERED.**

JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:16-cv-02567-RGK-JPR | Date | November 21, 2019 |
|---|---|---|---|
| Title | *Thomas E Rubin v. United States of America* | | |

_____ : _____

Initials of Preparer